Pier Paolo Caputo, Esq. (SBN 176698)
LAW OFFICES OF PIER PAOLO CAPUTO
1010 Wilshire Boulevard, Suite 113
Los Angeles, California 90017
Telephone: (213) 596-7977
Facsimile:  (213) 402-2726
paulcaputolawoffice@yahoo.com

Attorneys for Plaintiffs:
Abundio A. Cruz and Luz M.Cruz

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| ABUNDIO A. CRUZ and LUZ M. CRUZ<br><br>            Plaintiffs,<br><br>    vs.<br><br>WORLD SAVINGS BANK, A Federally Chartered Savings and Loan;) WACHOVIA MORTGAGE, A Division of Wells Fargo Bank, FSB; WELLS FARGO BANK, A National Association; MAI REALTY GROUP, An Unknown Entity; And All Persons Unknown, Claiming Any Legal Or Equitable Right, Title Estate, Lien Or Interest In The Property Described In the Complaint Adverse To Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title | CaseNo. CV10-03412-AHM-(JEMx)<br><br>Hon. A. Howard Matz<br><br>**FIRST AMENDED COMPLAINT** FOR: Damages and Injunctive Relief and for:<br><br>  1. UNFAIR BUSINESS PRACTICES (B&P 17200);<br>  2. DECEIT;<br>  3. NEGLIGENCE;<br>  4. QUIET TITLE.<br><br>**PUNITIVE AND EXEMPLARY DAMAGES REQUESTED**<br><br>**JURY TRIAL DEMANDED** |

Thereto, And DOES 1-100, Inclusive.

_____ Defendants. _____

## **INTRODUCTION**

1. Plaintiffs, Abundio A. Cruz and Luz M. Cruz (hereinafter "Plaintiffs") are the owners of residential real property located at 11203 Lambert Avenue in El Monte, California  91731.  Said real property is further described in that certain Deed of Trust (hereinafter as "Deed of Trust") of which a true and complete copy is attached hereto as Exhibit A.

2. On or about April 2006, Plaintiffs re-financed the then existing loan on their home with World Savings Bank, FSB, who is currently known as Defendant Wachovia Mortgage, in the amount of $436,000.00.  Said loan featured a payment option adjustable rate mortgage ("option ARM").  Said loan, however, was not the loan Plaintiffs requested and insisted upon.

3. In or about February 2006, Mai Realty Group by and through Rene Uribe, agent, telephoned the Plaintiffs.  Plaintiffs are informed and believe and thereupon allege that Mr. Uribe obtained Plaintiffs' home telephone number from a customer list that is shared by local businesses in the El Monte area of  Los  Angeles  County.   Mr.  Uribe  spoke  with  Plaintiffs  and  made

arrangements to meet with them in their home to discuss various loan instruments available to Plaintiffs.  Mr. Uribe arrived at Plaintiffs' home on or about February 6, 2006 at about 5:00 p.m. in the early evening.  The in home meeting lasted for about an hour during which Plaintiffs informed Mr. Uribe of their interest in preparing for their retirement.  Mr. Uribe told Plaintiffs that they could use the equity in their home to purchase income producing property and gladly offered his services in helping the Plaintiffs locate and purchase such property.   Furthermore, Mr. Uribe spoke enthusiastically about the benefits and advantages of option ARMs and told Plaintiffs that said mortgage device would be the perfect vehicle to finance the purchase of their income producing property.  Mr. Uribe told Plaintiffs that option ARMs were investment plans and if they (the Plaintiffs) did not have enough money to pay all their bills, then they could pay any amount they could afford on the option ARM.  Such information seemed suspect to Plaintiffs and they insisted that Mai Realty Group provide them a mortgage loan with a fixed interest rate and whose payments would be no more than $1,500.00 a month.   Plaintiffs' household income was approximately $2,500.00 a month at that time and they did not want to assume more debt than they could afford and anticipated that the income from the income producing property would help pay the underlying indebtness. Mr. Uribe

then told Plaintiffs that if they were to simply make payments in the amount of $1,500.00 a month then all would be well; they would never have anything to worry about.  Mr. Uribe further suggested that Plaintiffs could re-finance in about a year's time if the underlying debt became "too much for them to handle."  Said information seemed a bit more realistic to Plaintiffs than paying whatever amount they could afford.  Accordingly, Plaintiffs re-financed their home based upon the information Mr. Uribe told them and assumed that the interest rate would be fixed and that the payments would be within their financial means.  The loan, however, was not what Plaintiffs had bargained for.

4. Plaintiffs have lost their good credit standing and are about to lose their residence as a result of the deceptive lending practices caused by Defendant Wachovia Mortgage and subsequently enforced by Defendant Wells Fargo Bank and the remaining named and doe Defendants.

5. Plaintiffs are informed and believe and thereupon allege that each named and doe Defendant, 1 – 90, inclusive, is knowingly and unfairly profiting from the deceptive lending practices that are described below. Plaintiffs seek to enjoin said practices and to reform and reinstate the subject loan.  In the alternative, Plaintiffs seek monetary compensation as a result of sustaining

damages caused by the deceptive lending practices perpetrated by each and
every named and doe Defendants, 1 to 90, inclusive.

## **GENERAL ALLEGATIONS**

6. Plaintiffs are individual persons residing in the County of Los Angeles, State
   of California.

7. Defendant Wells Fargo Bank is a national association organized and
   operating under the laws of the United States of America.

8. Defendant Wachovia Mortgage is a division of Defendant Wells Fargo
   Bank, a National Association.

9. Defendant Mai Realty Group is business entity licensed by the California
   Department of Real Estate and acted as Broker, in the ordinary course of its
   business, in the within matter.

10. Doe Defendants 1 – 25, inclusive, are persons or entities who participated in
    and who benefited from the herein described abusive lending practices, but
    their identities were unknown to Plaintiffs at the time this complaint was
    filed. Plaintiffs are informed and believe and thereupon allege that said doe
    Defendants, 1 – 25, inclusive, are in some way involved in the actions
    complained of herein either as independent actors, or as agents, or as

principals of the other named Defendants.   Plaintiffs will amend this complaint to allege their true identities, capacities and roles when and as same are ascertained.

11. Doe Defendants 26 – 90, inclusive, are persons or entities who are unknown to Plaintiffs. Plaintiffs are informed and believe and thereupon allege that said doe Defendants 26 – 90, inclusive, were in some way involved in the actions complained of herein either as  independent actors, or as agents or as principals of the other named Defendants.   Plaintiffs will amend this complaint to allege their true identities, capacities and roles when and as same are ascertained.

12. Doe Defendants 91 – 100, inclusive, are persons or entities who are currently unknown to Plaintiffs. Plaintiffs are informed and believe and thereupon allege that said doe Defendants 91-100, inclusive, claim ownership to, or have clouded the title of, the subject residence.

13. Plaintiffs are informed and believe and thereupon allege that at all times mentioned herein the unknown Defendants are individuals and/or business entities whose forms are unknown and who were agents, principals, employees, employers, and co-conspirators of each and every other named or unnamed Defendant in this complaint. Plaintiffs are further informed and believe and thereupon allege that each of such Defendant is, and at all

relevant times herein, was acting within the scope of its authority and, as such agent, employee or alter-ego, acted with the permission and consent of the remaining named and unnamed Defendants.

14. Whenever in this complaint an act or omission of a corporation or business entity is alleged, said allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, who in turn were acting within the scope of their respective duties; that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

15. Venue is proper in the County of Los Angeles, State of California (the East District of the Los Angeles County Superior Court) in that the subject real property is located within said jurisdiction pursuant to *California Code of Civil Procedure, sec. 392.*

## FIRST CAUSE OF ACTION

## UNFAIR BUSINESS PRACTICES

## Against All Named Defendants and All Doe Defendants 1 -90, inclusive

## (California Business and Professions Code, sec. 17200)

16. Plaintiffs re-allege and incorporate by reference all allegations appearing in paragraphs 1 to 15, inclusive, of this complaint as though fully set forth herein.

17. Beginning in or about 2006 and continuing to the present time, Defendants committed acts of **unlawful business practices** pursuant to *California Business and Professions Code,* sec. 17200.  Section 17200 states that ". . . unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

18. The unlawful business practices of the Defendants are as follows:

    a. *12 C.F.R. 226.17(a) (1)* states:  "a) Form of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing."  The Official Staff Interpretation of the said Regulation states: "1. *Clear and conspicuous.* This standard requires that disclosures be in a reasonably understandable form. For example, while the regulation requires no mathematical progression or format, the disclosures must be presented in a way that does not obscure the relationship of the terms to each other. In addition,

although no minimum type size is mandated, the disclosures must be legible, whether typewritten, handwritten, or printed by computer." *See 12 C.F.R. Supplement I to Part 226, Paragraph 17(a) (1).* Said Interpretation, like the Regulation to which it refers, is also binding. The Truth in Lending Disclosure Statement (Exhibit B) that Defendant Wachovia provided violated this provision. Its terms were at variance with events as same actually occurred. By its terms, Plaintiffs were not to begin paying a little over $3,000.00 a month until 2014; however, Plaintiffs payments escalated to approximately $2,100.00 a month in about 2007, $2,400.00 a month about year later and further escalated to about $3,000.00 in about 2009. If the payments reflected in said Statement were simply mere guesses as to what Plaintiffs' payments would be, then said Statement should have so stated.

b. *24 C.F.R. 3500.7(a)* states:  "(a) Lender to provide. (1) Except as otherwise provided in paragraphs (a), (b), or (h) of this section, **not later than 3 business days** after a lender receives an application, or information sufficient to complete an application, the lender **must provide** the applicant with a GFE. In the case of dealer  loans,     the lender must either provide the GFE or ensure that the dealer provides

the GFE." (Emphasis added).  Parenthetically, "GFE" means "Good Faith Estimate."  This Regulation is binding.  Defendant Wachovia Mortgage violated this Regulation by not providing Plaintiffs with the mandated Good Faith Estimate of the charges they will most likely incur.

19. Beginning in or about 2006 and continuing to the present time, Defendants committed acts of **unfair business practices** pursuant to *California Business and Professions Code, sec. 17200*.  Specifically, Defendants have committed the following unscrupulous acts:

20. On or about April 2006, Plaintiffs refinanced their residential property. In a meeting that took place between Plaintiffs and their agent, Rene Uribe, an employee of Mai Realty Group (Broker), on or about February 6, 2006 at Plaintiffs' home, Plaintiffs explicitly told Mr. Uribe that they **wanted a loan with a fixed interest rate** and the payments **must not exceed $1,500.00 a month.** Plaintiffs' income at that time was approximately $2,500.00 per month.

21. Contrary to Plaintiffs' request, and without properly and fully informing Plaintiffs, Mr. Uribe of Mai Realty Group provided Plaintiffs with a loan that required them to make monthly mortgage payments that commenced at

about $1,700.00 a month but which escalated to over $3,000.00 per month starting in 2009. Such payments were beyond Plaintiffs' financial ability to pay. At no time during the period in which Plaintiffs applied for the loan, was Plaintiffs' household income capable of meeting such a high mortgage payment.  The unscrupulous business practice that Defendant Wachovia Mortgage perpetrated on Plaintiffs is known as **bait and switch**.

22. Plaintiffs did not discover the extent and nature of their mortgage obligations until they received statements from Defendant Wachovia Mortgage on or about 2009.  Said statements informed them that they were required to make monthly mortgage payments of approximately $3,000.00. Plaintiffs were alarmed by the escalation of their mortgage payments and feared that they will lose their home because of them.  Plaintiffs have lost their good credit standing and they now stand to lose their home as a result of being victimized by Defendant Wachovia's deceptive lending practices.

23. Plaintiffs have filed this action against all named Defendants and doe Defendants 1 – 90, inclusive, because they have been harmed by the predatory lending practices of said Defendants.  "Predatory lending" is a term used to characterize a range of abusive and aggressive lending practices, including, but not limited to, **deception or fraud; charging excessive fees and interest rates, making loans without regard to a**

**borrower's ability to repay**, or **refinancing loans repeatedly over a short period of time for the purpose of incurring additional fees without any economic gain to the borrower**."[1]

24. Plaintiffs are informed and believe and thereupon allege that Defendant Wachovia Mortgage profited from the foregoing practices by charging them fees and costs. The payment of said fees and costs came from the equity of Plaintiffs' home; the origination of such a deceptive loan benefited no one, except Defendant Wachovia Mortgage and its successors and assigns.

25. Plaintiffs are informed and believe and thereupon allege that the federal Office of the Comptroller of the Currency ("O.C.C.') has advised entities such as Defendant Wachovia Mortgage and its successors and assignees in its advisory letters 2003-2 and 2003-3 (Exhibits C and D, respectively), to "take corrective action" to remedy any deceptive practice so discovered in the area mortgage lending. Plaintiffs are further informed and believe and thereupon allege that their loan was subsequently taken over by Defendant Wells Fargo Bank, a National Association. Plaintiffs asked said Defendant to reform (or modify) the subject loan so that the mortgage payments would reflect and be based upon the fair market value of the subject residence. As an alternative, Plaintiffs suggested that a third party investor purchase the

---

[1] American Financial Services Assn. v. City of Oakland (2005) 34 C4th 1239

note. Said Defendant, however, refused to comply with the O.C.C.'s advisory letters to modify the terms of the subject loan.

26. Plaintiffs are informed and believe and thereupon allege that every lending regulatory agency has been aware of the type of unscrupulous business practices that were perpetrated on Plaintiffs. The Federal Deposit Insurance Corporation ("F.D.I.C."), the Office of Thrift Supervision ("O.T.S."), and the O.C.C have labeled these deceptive practices as **"loan flipping"** and **"equity stripping."**  The regulators define "loan "flipping" as the "repeated refinancing of a loan under circumstances that result in little or no economic benefit to the borrower."  The purpose of "loan flipping" is to generate additional loan points, loan fees, prepayment penalties, and fees from financing the sale of credit-related products. "Equity stripping" is identified as a predatory lending practice because it significantly harms consumers, by increasing their debt burdens and reducing their home equity. Plaintiffs are further informed and believe and thereupon allege that loans which can be characterized as "loan flipping" and "equity stripping" are made predominantly on the basis of the liquidation value of the collateral.  Furthermore, said loans are made without regard to the borrower's ability to service and repay the loan according to its terms absent resort to that collateral. The lending regulators declared that both of

these lending practices are unlawful under Rule 2000 of the Federal Deposit Insurance Act (Exhibit E) and are deemed deceptive under Section 5 of the Federal Trade Commission Act.[2]

27. Plaintiffs are informed and believe and thereupon allege that commencing in or about 1999, numerous **anti-predatory guidelines** were established by federal banking regulators[3] to protect the consumer and borrower from abusive lending practices. (Exhibits C through F, inclusive[4]). These guidelines imposed a **duty** on the Lender to conduct due diligence, to ensure that the borrower is capable of making the mortgage payments when due, and to fully apprise the borrower of the risks associated with the loan. To protect the consumer, the guidelines imposed the following duties on the Lender: [5]

   a. To prudently underwrite real estate loans to reflect all relevant credit factors, including the capacity of the borrower to adequately service the debt.   This process requires the lender to prudently and

---

[2] FDIC rule 2000 (Exhibit E) and Office of the Comptroller of the Currency's Advisory Letter 2003-2 (Exhibit C).
[3] The pertinent regulators include the F.D.I.C (Federal Deposit Insurance Corporation) the O.C.C (Office of the Comptroller of the Currency,) and the O.T.S. (Office of Thrift Supervision).
[4] These guidelines outline the" deceptive lending practices" which each of the named Defendants has implemented or participated in.

[5] FDIC (Statements of Policy #5000) Statement on Subprime Mortgage Lending (Exhibit F).

**independently verify** Plaintiffs' sources of income or assets for servicing the debt;

b. To provide information that enables consumers to understand material terms, costs, and risks of loan products that will help the consumer select a product; and

c. To apply **strong control systems to monitor** whether actual practices are consistent with stated policies and procedures. Said systems should address compliance and consumer information concerns, as well as issues pertaining to safety and soundness, and said systems should encompass both institution personnel and applicable third parties, such as **mortgage brokers or correspondents.** [Emphasis Added].

28. F.D.I.C. Rule 5000 on Statement on Subprime Mortgage Lending (Exhibit F) states as follows:

"**Consumer Protection Principles:**

*Fundamental consumer protection principles* relevant to the underwriting and marketing of mortgage loans include:

* Approving loans based on the borrower's ability to repay the loan according to its terms; and

* Providing information that enables consumers to

understand material terms, costs, and risks of loan products at a time that will help the consumer select a product.

- Communications with consumers, including advertisements, oral statements, and promotional materials, should **provide clear and balanced information about the relative benefits and risks of the products. This information should be provided in a timely manner to assist consumers in the product selection process, not just upon submission of an application or at consummation of the loan**." [Emphasis added].

29. Plaintiffs are informed and believe and thereupon allege that Defendant Wachovia Mortgage completely disregarded standard underwriting requirements when it processed Plaintiffs' loan application.  Plaintiffs are further informed and believe and thereupon allege that standard underwriting guidelines generally require that the monthly mortgage payments not exceed 35% of the borrower's income. When Plaintiffs applied for the subject loan, they were earning about $2,500.00 per month. However, Defendant Wachovia required Plaintiffs to start making payments in the amount of about $1,700.00 and said payments eventually escalated to about $3.000.00 a month in less than 3 years. Plaintiffs are further informed

and believe and thereupon allege that said Defendant should have approved Plaintiffs for a loan not to exceed $875.00 a month.

30. Defendant Wachovia Mortgage's disregard of the lending guidelines pertaining to the Debt to Income Ratios ("DTI") caused Plaintiffs much financial hardship. Plaintiffs were unable to pay the escalated mortgage payments. Had Defendant Washington Mutual Bank complied with prudent "safe and sound" underwriting policies, Plaintiffs would not have defaulted on the subject loan.

31. Plaintiffs are informed and believe and thereupon allege that one of Defendant Wachovia Mortgage's due diligence mandates required it to request Plaintiffs' tax returns from the IRS (form 4506-T) in order to independently verify Plaintiffs' income.  Plaintiffs are further informed and believe and thereupon allege that said Defendant intentionally evaded this requirement and did not require any of the brokers with whom they worked to obtain any such documentation.

32. Moreover, Defendant Wachovia Mortgage did not provide Plaintiffs with a draft or copy of the loan documents for Plaintiffs' review. This omission violated FDIC Rule 5000 which states that the loan documents and all other pertinent information "**should be provided in a timely manner to assist**

**consumers in the product selection process, not just upon submission of an application or at consummation of the loan**." [Emphasis added].

33. The O.C.C. warned about assignee liability in its O.C.C. <u>AL-2003-3</u> at pg. 16:

> "Predatory loans originated through mortgage brokers, or purchased from third-party lenders, may subject national banks to liability or supervisory action under a wide range of federal consumer protection laws.....Even in table-funded or purchase transactions, **a bank may have liability for violations of law as a successor or assignee of the original creditor**." [Emphasis added].
>
> "These arrangements may present risks for participating parties, including the risk that they will become implicated in predatory lending practices. Such practices — in addition to causing great harm to borrowers — may **expose participants to significant legal liability** and reputation risk, and subject the ultimate lender to the high credit risk of lending to a borrower who lacks the ability to repay the loan without resorting to collateral." [Emphasis added].

34. Plaintiffs are informed and believe and thereupon allege that Defendant Wells Fargo Bank is a successor to Defendant Wachovia Mortgage and has stepped into the shoes of said Defendant.   Plaintiffs are further informed and believe and thereupon allege that Defendant Wells Fargo Bank knew or should have known of the unlawful and unfair business practices surrounding Plaintiffs' loan and therefore should be

prevented from benefiting from and enforcing said loan which was originated by Defendant Wachovia Mortgage.

35. Plaintiffs are informed and believe and thereupon allege that Defendant Wells Fargo Bank, a National Association, is **not** a bona fide purchaser or a holder in due course because it did not purchase the subject note for valuable consideration.

36. **None of the lenders in the within case acted as traditional lenders of money in which loan funds are extended with the expectation of earning interest thereon and having the borrower eventually repay the underlying debt**. Plaintiffs are informed and believe and thereupon allege that Defendant Wachovia Mortgage encouraged the brokers with whom they worked, including but not limited to Mai Realty Group, to induce consumers such as Plaintiffs to take out Wachovia's loan products even if there were no pressing need to do so. Such action is known as "**loan flipping**" and Defendant Wachovia Mortgage's actions are those of a speculator. Prior to assuming their current loan, Plaintiffs' home was financed with loan from Countrywide Mortgage which featured a fixed rate. Plaintiffs were wrongfully induced to take out the current

loan for the sole purpose of generating fees for Defendants Mai Realty and Wachovia. Plaintiffs are further informed and believe and thereupon allege that each lender herein attempted to collect fees from either originating or servicing the loan and then foreclosing on Plaintiffs' residence. To maximize their revenue, each lender intended to issue loans that were doomed to go into default. Lenders' actions are inconsistent with traditional lending practices.

37. Plaintiffs' risk of losing their residence in foreclosure could have been easily avoided or remedied had Defendant Wachovia followed the most basic lending guidelines in approving Plaintiffs' loan. Under standard lending guidelines, Plaintiffs would only qualify for a house with monthly mortgage payments of up to $875.00. In spite of knowing this fact, Defendant Wachovia Mortgage went ahead and saddled Plaintiffs with a loan with mortgage payments above their financial ability to pay.

38. Insofar as the unfair prong of *California Business and Professions Code, sec. 17200* is concerned, the harm Plaintiffs sustained outweighs the utility of Defendants' policies and

practices.  The Defendants saddled Plaintiffs with a mortgage loan that they could not afford and one which they did not initially want.  Plaintiffs, in essence, were victims of predatory lending.   The Defendants' practices were clearly immoral, unethical, oppressive, unscrupulous and substantially injurious to Plaintiffs.

39. By using the term "predatory lending," Plaintiffs herein characterize Defendants' business practices as **abusive and aggressive since their loan was made without regard to their ability to repay.**  The Defendants intended to have Plaintiffs refinance their loan repeatedly over a short period of time, thereby causing them to incur additional fees without any corresponding economic gain.  Moreover, in an investigation study written by Ronald Paul Hill and John C. Kozup, Summer 2007, Consumer Experiences with Predatory Lending Practices *Journal of Consumer Affairs.* This study is one of many in the area of predatory lending.  Plaintiffs, like the consumers the authors discuss in their study, are "vulnerable."  Moreover, in a Joint Report (June 2000) named Curbing Predatory Home

Mortgage Lending, The U.S. Department of Treasury and U.S. Department of Housing and Urban Development, (see 15 USC 1691; 42 USC 3601 et seq.) conducted government studies and concluded that certain abusive lending practices have been targeted at, and have **harmed, low-income persons and the elderly and have been marketed primarily in predominantly minority neighborhoods**. Plaintiffs fit within said profile--they are racial minorities.

40. Lastly, the unfair business practices of the Defendants (i.e. "bait and switch" and disregarding regulatory guidelines) threaten an incipient violation of a consumer protection law or a violation of the policy or spirit of such law because the effects of Defendants' unfair business practices threaten or harm competition. Plaintiffs (and consumers similarly situated) do not have an adequate remedy at law. Plaintiffs have been damaged in that they have lost their good credit standing and if their home is foreclosed, they will lose all monies they have paid into said home.

**SECOND CAUSE OF ACTION**

**DECEIT**

**Against All Named Defendants and All Doe Defendants 1 -90, inclusive**

41. Plaintiffs re-allege and incorporate by reference those allegations appearing in paragraphs 1 to 40, inclusive, of this complaint as though fully set forth herein.

**Broker's Misrepresentations and Concealments:**

42. Defendant Mai Realty Group, by and through its agent, Rene Uribe, had a duty to present the subject loan to Plaintiffs in an honest and forthright manner.  Mr. Uribe misled Plaintiffs into believing that they would be provided with a loan that met their retirement needs.  Plaintiffs wanted a loan with a fixed interest rate and whose payments would not exceed $1,500.00 a month.  These 2 requirements were critical to Plaintiffs.  In 2006 Plaintiffs' household income was about $2,500.00 a month.  Mr. Uribe did not disclose to Plaintiffs the numerous risks associated with option ARMs.  Specifically, Mr. Uribe failed to inform Plaintiffs: (a) that if they kept their payments artificially low, then they would be adding to the

underlying debt already owed to the lender (this option or consequence is known as negative amortization) and (b) that they were qualified for the loan (if at all) only at the introductory rate of about 1%.

43. Mr. Uribe concealed the true nature, terms and risks of the subject loan and intended to defraud Plaintiffs by inducing them to take out the subject loan for the purpose of generating fees and bonuses for himself and his realty firm.  Plaintiffs were provided with a loan that was not suited to their needs or finances.

44. Plaintiffs were justified in relying on Mr. Uribe's statements and representations, rather than on the loan documents.  Rene Uribe had a duty to accurately and truthfully represent the loan terms to Plaintiffs because he was their loan agent and was therefore in a position of trust.

45. Mr. Uribe knew, or should have known, that Plaintiffs were relying on his representations because Plaintiffs are not financially sophisticated and were not given an opportunity to thoroughly read and understand the loan documents.

46. Plaintiffs did not realize that they had entered into a loan agreement that required them to pay, in less than 3 years, approximately $3,000.00 a month in mortgage payments and whose interest rate was variable.

47. Plaintiffs sustained damage as a result of Mr. Uribe's deceitful business practices.  They have lost their good credit rating and are now in default because they were required to make payments that were beyond their financial means. Had the mortgage payments been as Plaintiffs expected and were led to believe, Plaintiffs would not have defaulted.

**Lenders' Misrepresentations and Concealments:**

48. Plaintiffs are informed and believe and thereupon allege that F.D.I.C.- Rule 5000 on Statement on Subprime Mortgage Lending  prohibits Lenders from "Engaging in fraud or deception **to conceal the true nature of the mortgage loan obligation**, or ancillary products, from an unsuspecting or unsophisticated borrower."

49. Plaintiffs are informed and believe and thereupon allege that generally, a loan is an amount of money given to a borrower on the condition that he or she will pay the Lender back at a later time.  Plaintiffs are further informed and believe and thereupon allege that for a residential loan, a lender must ensure that the loan is prudently underwritten to be "safe and sound" for the bank and for the consumer. F.D.I.C. Interagency Guidelines Establishing Standards for Safety and Soundness, (Appendix A to Part 364) at II (D.) (Exhibit F).

50. Plaintiffs are informed and believe and thereupon allege that **Defendant Wachovia Mortgage in the within case did not act as traditional lender of money in which loan funds are extended with the expectation of earning interest thereon and having the Plaintiffs eventually repay the underlying debt**.  Plaintiffs are informed and believe and thereupon allege that Defendant Wachovia Mortgage encouraged the brokers with whom they worked, including but not limited to Mai Realty Group, to induce consumers such as Plaintiffs to take out Wachovia's loan products even if there were no pressing need to do so.  Such action is known as "**loan flipping**" and Defendant Wachovia Mortgage's actions are those of a speculator. Prior to assuming their current loan, Plaintiffs' home was financed with loan from Countrywide Mortgage which featured a fixed rate.   Plaintiffs were wrongfully induced to take out the current loan for the sole purpose of generating fees for Defendants Mai Realty and Wachovia. Plaintiffs are further informed and believe and thereupon allege that each lender herein attempted to collect fees from either originating or servicing the loan and then foreclosing on Plaintiffs' residence. To maximize their revenue, each lender intended to issue loans that were doomed to go into default. Lenders' actions are inconsistent with traditional lending practices.

51. Because Defendant Wachovia Mortgage did not act as a traditional lender of money in the within case, it was under a duty to disclose to Plaintiffs all material facts concerning the subject loan. Said Defendant intended to defraud Plaintiffs for the purpose of generating fees and monies for itself.

52. Defendant Wachovia Mortgage failed to advise and inform Plaintiffs that it had substantially deviated from standard underwriting procedures as mandated by federal regulatory agencies:  the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision. Specifically, Defendant Wachovia Mortgage failed to inform Plaintiffs (among other things) (a) that they did not qualify for the subject loan because their Debt to Income Ratio exceeded $35% and (b) that said Defendant did not independently verify Plaintiffs' sources of income or employment histories for the purpose of determining whether or not Plaintiffs could repay the underlying debt.

53. Plaintiffs are informed and believe and thereupon allege that Defendant Wells Fargo Bank is a successor to Defendant Wachovia Mortgage and has therefore stepped into the shoes of said Defendant. Accordingly, Defendant Wells Fargo Bank of America should be held liable for any breach of duty that Defendant Wachovia Mortgage owed to Plaintiffs.  Plaintiffs are further

informed and believe and thereupon allege that said Defendant knew or should have known of the unlawful and unfair business practices surrounding Plaintiffs' loan and therefore should be prevented from benefiting from and enforcing said loan which was originated by Defendant Wachovia Mortgage.

54. Plaintiffs have been damaged and said damages have been caused by Defendant Wachovia's deceptive lending practices.  Plaintiffs seek actual damages in an amount that is sufficient to cover all excessive interest, fees and costs that were paid as a result of Plaintiffs' higher mortgage payments.

55. Plaintiffs further seek punitive and exemplary damages against all Lenders because of Lenders' attempt to profit from Defendant Wachovia Mortgage's deceptive practices and for the refusal of all Lenders to remedy such practices.

## THIRD CAUSE OF ACTION

## NEGLIGENCE

### Against All Named Defendants and Doe Defendants 1 -90, inclusive

56. Plaintiffs re-allege and incorporate by reference those allegations appearing in paragraphs 1 to 55, inclusive, of this complaint as though fully set forth herein.

**<u>Negligence of the Broker:</u>**

57. Defendant Mai Realty Group, by and through its loan agent, Rene Uribe, owed a duty of care to Plaintiffs.  Said Defendant, however, misled Plaintiffs into believing that they would be provided with a loan that met their needs—one with a fixed interest rate and whose payments would not exceed $1,500.00 a month.  These 2 requirements were critical to Plaintiffs.

58. Said Defendant breached its duty of care to Plaintiffs when it provided Plaintiffs with a loan that was not suited to Plaintiffs' needs or financial situation.  The loan that said Defendant provided was an option ARM.  The interest rate was variable and Plaintiffs were required to make payments in less than years of about $3,000.00.

59. Said Defendant's breach caused Plaintiffs much harm and damage. Plaintiffs have lost their good credit rating and they now stand to lose their home.

**<u>Negligence of the Lenders:</u>**

60. Plaintiffs are informed and believe and thereupon allege that **Defendant Wachovia Mortgage did not act as traditional lender of money in which**

**loan funds are extended with the expectation of earning interest thereon and having the Plaintiffs eventually repay the underlying debt.** Plaintiffs are informed and believe and thereupon allege that Defendant Wachovia Mortgage encouraged the brokers with whom they worked, including but not limited to Mai Realty Group, to induce consumers such as Plaintiffs to take out Wachovia's loan products even if there were no pressing need to do so.  Such action is known as "**loan flipping**" and Defendant Wachovia Mortgage's actions are those of a speculator. Prior to assuming their current loan, Plaintiffs' home was financed with loan from Countrywide Mortgage which featured a fixed rate.   Plaintiffs were wrongfully induced to take out the current loan for the sole purpose of generating fees for Defendants Mai Realty and Wachovia. Plaintiffs are further informed and believe and thereupon allege that each lender herein attempted to collect fees from either originating or servicing the loan and then foreclosing on Plaintiffs' residence. To maximize their revenue, each lender intended to issue loans that were doomed to go into default. Lenders' actions are inconsistent with traditional lending practices.

61. Plaintiffs are informed and believe and thereupon allege that Defendant Wells Fargo Bank is a successor to Defendant Wachovia Mortgage and has therefore stepped into the shoes of said Defendant. Accordingly, Defendant

Wells Fargo Bank of America should be held liable any breach of duty that Defendant Wachovia Mortgage.  Plaintiffs are further informed and believe and thereupon allege that Defendant Wells Fargo knew or should have known of the unlawful and unfair business practices surrounding Plaintiffs' loan and therefore should be prevented from benefiting from and enforcing said loan which was originated by Defendant Wachovia Mortgage.

62. Plaintiffs are informed and believe and thereupon allege that under the foregoing consumer protection guidelines, Defendants Wachovia Mortgage and Wells Fargo Bank ("Lenders") had a duty to ensure that Plaintiffs' loan complied with prudent "safe and sound" guidelines, and that Plaintiffs did not undertake a loan above their financial means.

63. Plaintiffs informed Defendant Lenders that the maximum monthly loan amount they could pay was $1,500.00 a month. Accordingly, said Defendants had a duty to ensure that the loan for which Plaintiffs was applying complied with Plaintiffs request.

64. Defendant Lenders breached the duty of care to Plaintiffs when it funded Plaintiffs loan by:

   a. Failing to adequately supervise Rene Uribe's business practices to ensure that no misrepresentations were transmitted;

b. Failing to prudently review Plaintiffs' loan application and verify their income;

c. Failing to follow the underwriting guidelines that were intended to protect consumers like Plaintiffs; and

d. Failing to rectify Mr. Uribe's misrepresentations.

65. Defendant Lenders knew or should have known of their aforementioned duties of care since they had been listed and elaborated in <u>O.C.C.'s Advisory Letter AL-2003-3.</u>   Said Defendants breached these duties when they took steps to foreclose on Plaintiffs property without first taking any "corrective action."

66. The Defendants have breached their duty of care owing to Plaintiffs and said breach has caused much damage and harm to Plaintiffs.  Plaintiffs have lost their good credit rating and they now stand to lose their home.

<u>**FOURTH CAUSE OF ACTION**</u>

<u>**QUIET TITLE**</u>

<u>**(Against Defendants Wachovia Mortgage and Wells Fargo Bank**</u>

<u>**And Doe Defendants 80 – 100, incl.)**</u>

67. Plaintiffs re-allege and incorporate each and every allegation as described in paragraphs 1 through 66, inclusive, as though fully set forth herein.

68. At all times herein, Plaintiffs were ready, willing and able to tender and make the payments they had expected to make with Defendant Mai Realty Group by and through its loan agent, Rene Uribe. At all times herein, Plaintiffs were able to tender such amount, namely $1,500.00 per month. Defendant Lenders (Wachovia Mortgage and its successor, Wells Fargo Bank) refused to accept said mortgage payments.

69. Plaintiffs are the owners of the subject property located at 11203 Lambert Avenue in El Monte, California 91731 and as further described in the Deed of Trust executed by Plaintiffs and recorded in the Official Records of the County of Los Angeles.

70. Plaintiffs seek to quiet title against the claims of all Defendants as follows: Defendants hold themselves out as entitled to fee simple ownership of the subject property subject to the deed of trust securing a note that would not require Plaintiffs to make payments in excess of $1,500.00 a month. Plaintiffs' assert that the Deed of Trust should not secure any amount that is in excess of said mortgage payments, and deem such excess payments void as a result of the deceptive lending practices are hereinabove described.

71. Plaintiffs therefore seek a judicial declaration that the title to the subject property is vested in Plaintiffs alone and that Defendants, and each of them, be declared to have no estate in the subject property, other than a mortgage lien or deed of trust, to secure the above mentioned reformed loan agreement.

**WHEREFORE**, Plaintiffs pray judgment against Defendants as follows:

**ON ALL CAUSES OF ACTION:**

1. For injunctive relief, prohibiting Defendants from foreclosing on and reselling Plaintiffs' residence;

2. To set aside any future trustee sale and trustee's deed to Defendants;

3. For actual and restitution damages according to proof;

4. For compensatory damages according to proof;

5. For punitive and exemplary damages;

6. For attorney fees and costs of suit herein incurred; and

7. For such other further relief as the Court may deem just and proper.

Dated:  June 22, 2010

                    LAW OFFICES OF PIER PAOLO CAPUTO

                            *Pier Paolo Caputo*

                            Pier Paolo Caputo, Esq.
                            Attorneys for Plaintiffs